IN RE ESTATE OF HASH. HASH, RESPONDENT, v. HASH, ADMR., ET AL., RESPONDENTS; ARNOLD, DEFENDANT, BY LYTLE, GUARDIAN, APPELLANT.

(No. 4,794.)

(Submitted May 29, 1922. Decided July 3, 1922.)

[208 Pac. 605.]

*Wills—Construction—Bequest to "Children" Does not Include "Grandchildren."*

Wills—Death of Devisee Before Death of Testator—Effect on Devise.
   1. Section 7012, Revised Codes of 1921, providing that, when any estate is devised to any child or other relation of the testator and the devisee dies before the testator, leaving lineal descendants, such descendants take the estate given by the will in the same manner as the devisee would have done had he survived the testator, applies only to devises and not to legacies.

Same—Effect of Death of Beneficiary on Legacy or Devise.
   2. In the absence of statute, a legacy or devise to a person dead at the time the will is made is void.

Same—Word "Children" Does not Include Grandchildren.
   3. Where a will bequeathed one-half of the testator's estate to his two sisters and the other half to their children if living at the time of his death, and both sisters had died before the will was made leaving no children, the world "children" used in the will could not, under the rules of construction of wills laid down by sections 7023 and 7039, Revised Codes of 1921, be construed as including grandchildren so as to permit a grandson of one of the sisters to share in the estate.

*Appeal from District Court, Cascade County; H. H. Ewing, Judge.*

PROCEEDING by Andrew O. Hash against John R. T. Hash, administrator, and others, for a partial distribution of the estate of Wiley Hash. From the order, Andrew Arnold, by his guardian, Everett E. Lytle, appeals. Affirmed.

   1. Applicability of statute to prevent lapses, in case of person dead at time will was made, see note in 3 A. L. R. 1682.
   Lapse of legacy or devise by death of beneficiary after testator's death, but before legacy or devise becomes payable, see note in Ann. Cas. 1913B, 81.

[64 Mont. 118.]

*Messrs. Kotz, Molumby & Barlow,* for Appellant, submitted a brief; *Mr. Frank A. Barlow* argued the cause orally.

It is a well-settled rule of law that if a testator bequeathes part of his estate to children, and there is nothing in the wording of the will or the surrounding circumstances from which a different intent can be gleaned, and no circumstances arising which make it necessary to give a different interpretation to the words, the word "child" or "children" will include only sons and daughters in a primary sense. It is likewise a well-settled rule of law that if the wording of the will itself or if the surrounding circumstances show that it was the intent of the testator to include in his bequest to children all of his grandchildren and other issue, then that interpretation must be given to the words of the testator. (*Burgess* v. *Hargrove,* 64 Tex. 110; *Walton* v. *Cotton,* 19 How. (U. S.) 355, 358, 15 L. Ed. 658; *Cutting* v. *Cutting,* 6 Fed. 259, 263, 6 Sawy. 396; *Russell* v. *Wright,* 98 Ala. 652, 657, 13 South. 594; *Bond's Appeal,* 31 Conn. 183, 192; *White* v. *Rowland,* 67 Ga. 546, 554, 44 Am. Rep. 731; *Martin* v. *Modern Woodmen of America,* 253 Ill. 400, 403, Ann. Cas. 1913A, 299, 97 N. E. 693; *Hunt's Estate,* 133 Pa. 260, 264, 19 Am. St. Rep. 640, 19 Atl. 458; *In re Reynolds,* 20 R. I. 429, 431, 39 Atl. 896; *Williams* v. *Knight,* 18 R. I. 333, 337, 27 Atl. 210; *Douglas* v. *James,* 66 Vt. 21, 24, 44 Am. St. Rep. 817, 28 Atl. 319; *Vaughn* v. *Vaughn,* 97 Va. 322, 328, 33 S. E. 603; *Waldron* v. *Taylor,* 52 W. Va. 284, 289, 45 S. E. 336; *Crowell* v. *Rose,* 38 R. I. 93, 94 Atl. 683, 685.)

*Messrs. Skinner & Smith* and *Messrs. Freeman, Thelen & Frary,* for Respondent, submitted a brief; *Mr. G. S. Frary* argued the cause orally.

The word "children" as used in a will is usually given its primary meaning of legitimate offspring of the first degree and does not include more remote descendants unless there is something in the context of the will which manifests intention on the part of the testator to give it a more extensive mean-

ing, and will not be interpreted to include grandchildren or a child of a deceased child. (*Rhoton* v. *Blevin*, 99 Cal. 645, 34 Pac. 513; *Pugh* v. *Pugh*, 105 Ind. 552, 5 N. E. 674; *In re Potter's Estate*, 110 N. Y. 599, 35 N. E. 956; *Re Keogh*, 126 App. Div. 285, 110 N. Y. Supp. 868; *Anderson* v. *Bean*, 220 Mass. 360, 107 N. E. 964; *In re Disney's Will*, 190 N. Y. 128, 82 N. E. 1093.)

MR. CHIEF COMMISSIONER POMEROY prepared the opinion for the court.

October 29, 1914, Wiley Hash made his will, containing the following provisions:

"I give, devise and bequeath to my brothers, John Hash and Andrew Hash the sum of one dollar ($1.00) each. All the rest and residue of my estate, including my ranch, situated about twelve (12) miles south of Great Falls, Montana, and all property of which I may be the owner or entitled to at my decease, I give, devise and bequeath as follows: An undivided one-fourth thereof to my sister, Nancy Hash Bailey, in fee simple absolutely, the remaining undivided one-fourth thereof to my sister, Ruth Lottie Hash Kailer, of Gilford, Kansas, in fee simple absolutely, the remaining undivided one-half of my estate I devise, to the children of my said sisters, Nancy Hash Bailey and Ruth Lottie Hash Kailer, who may be living at the time of my death, share and share alike."

Wiley Hash died March 9, 1915. The will was probated. Proceedings were brought to determine the rights of claimants to the property subject to distribution. Trial was had on an agreed statement of facts, and the court found that the decedent died intestate. The appeal is by one of the defendants, Andrew Arnold, the only grandchild of Ruth Lottie Hash Kailer. Nancy Hash Bailey died before the will was made, without issue. Ruth Lottie Hash Kailer died before the will was made. She had no children living at that time. The defendant was born before the will was executed. It does not appear that these facts were known to Wiley Hash. John

Hash and Andrew Hash survived the decedent. Prior to the making of the will, Wiley Hash had contracted to convey the ranch to W. S. and Robert Blaine and before his death conveyance was made pursuant to the contract, the decedent taking from the purchasers a mortgage on the ranch for $14,105.

The first contention of the defendant is that he is entitled [1] to the share awarded to Ruth Lottie Hash Kailer, by virtue of section 7012, Revised Codes of 1921, which reads: "When any estate is devised to any child, or other relation of the testator, and the devisee dies before the testator, leaving lineal descendants, such descendants take the estate so given by the will, in the same manner as the devisee would have done had he survived the testator."

This court has held the section applies only to devises and [2] not to legacies. (*In re Fratt's Estate*, 60 Mont. 526, 199 Pac. 711.) In the absence of statute, a legacy or devise to a person dead at the time the will is made is void. (40 Cyc. 1939; 28 R. C. L. 336.) Some courts have held that a statute similar to section 7012, *supra*, applies where the devisee was dead when the will was made. To our mind the scope of the statute is clear. Its purpose is to prevent the lapse of a devise in certain cases where the devisee dies after the will is made and before the death of the testator. To further extend it would be to usurp the powers of the legislature. Prior to March 18, 1905, section 1310 of the Civil Code of California was identical with section 7012, *supra*. It is found in the same terms in the California statutes of 1850. In 1905 the section was amended to apply to legacies as well as to devises. On May 16, 1921, the section was again amended and now reads: "When any estate is devised or bequeathed to any child or other relation of the testator, and the devisee or legatee dies before the testator, leaving lineal descendants, *or any such child or other relation is named in a will as a devisee or legatee and is dead at the time the will is executed, but leaves lineal descendants surviving the testator,* such descendants take the estate so given by the will in the same manner

as the devisee or legatee would have done had he survived the testator." The amendment of 1921 is indicated by the italics. In the absence of some such legislation, we hold that a devise or a legacy to a person dead when the will is made is void.

The defendant further contends that, inasmuch as, at the [3] time the will was made, no children of Nancy Hash Bailey or Ruth Lottie Hash Kailer were living, the word "children" should be read "grandchildren," and, under such construction, he would be entitled to one-half of the estate. "The words of a will are to be taken in their ordinary and grammatical sense, unless a clear intention to use them in another sense can be collected, and that other can be ascertained." (Sec. 7023, Rev. Codes 1921.)

"When, applying a will, it is found that there is an imperfect description, or that no person or property exactly answers the description, mistakes and omissions must be corrected, if the error appears from the context of the will or from extrinsic evidence; but evidence of the declarations of the testator as to his intentions cannot be received." (Sec. 7039, *Id.*)

Defendant cites many authorities in support of his contention, among them *In re Schedel,* 73 Cal. 594, 15 Pac. 297. The case of *Rhoton* v. *Blevin,* 99 Cal. 645, 34 Pac. 513, is possibly a stronger case in support of his contention. In each of these cases there were certain facts present from which the intention of the testator could be ascertained. In the later case of *Estate of Willson,* 171 Cal. 449, 153 Pac. 927, the same court said: "The word 'children,' in a will, has been held to include grandchildren in only two classes of cases. The first class is where there is an ambiguity in the will itself which leaves the meaning of the testator in respect to the word 'children' uncertain. In such cases extrinsic evidence may be introduced to explain the meaning intended by the testatrix and to show that the word was used to include grandchildren. This class is within scope of section 1318 of the Civil Code [sec. 7017, Rev. Codes Mont. 1921]. The other class consists of cases where there is a latent ambiguity, and comes within

[64 Mont. 118.]

section 1340 of the Civil Code [sec. 7039, Rev. Codes Mont. 1921]. Where the will purports to make a gift to 'children' and it appears that none were living at the execution of the will, or afterward, extrinsic evidence may be given tending to prove that a gift to grandchildren was intended. In such cases the ambiguity itself, as well as the facts which explain it, appears from extrinsic evidence.  *  *  *  There is nothing in the context of this will which throws doubt upon the meaning of the word 'children' as used in the residuary clauses, nothing to suggest that it was not used in the ordinary sense to describe the immediate offspring of the brothers and sisters named. The evidence of extrinsic circumstances showed that the testatrix had much love and affection for her grandnephews and grandnieces. From this an inference might be indulged that she would not wish to deprive them of the share of her estate which the law would have cast upon them through relationship. But the will itself is clear; it excludes them from its benefits, and to say that the testatrix should have included them would be to make a new will for her instead of the one she chose to execute.''

There is no presumption in the instant case that Wiley Hash knew that there were no children of his sisters living. If any presumption is to be indulged, it would be to the contrary. We have no right to say that, had the facts been known to him, he would have preferred to leave his property to a grandnephew instead of to his brothers.

We recommend that the decree of the trial court be affirmed.

Per Curiam: For the reasons given in the foregoing opinion the decree of the trial court is affirmed.

*Affirmed.*